# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE ANTHONY TORREZ,<br>    Plaintiff,<br><br>        v.<br><br>SCOTT SEMPLE, et al.,<br>    Defendants. | No. 3:17-cv-01211 (SRU) |

## INITIAL REVIEW ORDER

Jose Anthony Torrez, currently confined at Northern Correctional Institution in Somers, Connecticut, filed a complaint *pro se* under 42 U.S.C. § 1983 challenging his conditions of confinement as a pretrial detainee and asserting a claim for failure to protect him from assault. The defendants are Scott Semple, Allison Black, Kim Jones, Lieutenant Syed, and Correctional Officers Victor Castillo, Anderson, and Pasquale Pisano. Torrez's complaint was received on July 20, 2017, and his motion to proceed *in forma pauperis* was granted on July 21, 2017.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is

well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**I. Allegations**

At the time of the incident underlying this action, Torrez was a pretrial detainee confined at Bridgeport Correctional Center. Torrez is classified as seriously mentally ill. He suffers from bipolar disorder, depression, post-traumatic stress disorder, attention deficit disorder, attention deficit hyperactivity disorder, and conduct disorder. He has taken mental health medication since childhood. Torrez also has engaged in acts of mania and self-harm, and has suicidal ideations.

On February 17, 2016, Torrez was in the admitting and processing area of the Bridgeport Correctional Center, waiting to go to court. He asked Officer Castillo for permission to use the bathroom. On his way back, Torrez stopped in front of bull pen #5 to speak to his brother. Officer Castillo saw Torrez speaking to another inmate. He yelled at Torrez, stated that he had only given Torrez permission to use the bathroom, and ordered him immediately to go to lock up.

Torrez did not understand the verbal abuse and experienced an episode of post-traumatic stress disorder. Torrez told Officer Castillo that he had not seen his brother in five years and wanted to see how he was doing. Officer Castillo aggressively walked toward Torrez and again ordered him to go to lock up. As Torrez walked back to bull pen #2, Officer Castillo stepped in front of Torrez, chest-to-chest. Torrez raised his hands to show that he did not want any

2

problems, and asked Officer Castillo why he was in Torrez's face. Officer Castillo then grabbed Torrez by his sweater and punched him in the face. As Torrez stumbled back, Officer Anderson lifted Torrez up and slammed him on the floor, inflicting lower back and hip pain. While Officer Anderson applied handcuffs, Officer Castillo struck Torrez in the head a few times.

Officer Pisano called a code orange indicating that a correctional officer had been assaulted. Torrez was placed in punitive segregation for allegedly assaulting Officer Castillo. When he arrived at the restrictive housing unit, Lieutenant Syed ordered Torrez to undergo a controlled strip search.

Two officers held Torrez bent over a bench in a humiliating manner. At least four other officers watched while another officer removed all of Torrez's clothes. Those actions exacerbated Torrez's post-traumatic stress disorder, which was caused by sexual abuse as a child. Under Lieutenant Syed's order, the officer conducted a digital search of Torrez' anus. Contrary to departmental policy, the search was not videotaped. Torrez was placed on in-cell restraints for a day and a half. The cell had feces in the air vents.

Defendants Semple, Black, Jones, and Syed ordered Torrez transferred to Northern Correctional Institution for placement on administrative segregation. They believed that Torrez had assaulted Officer Castillo. They were aware that the conditions at Northern Correctional Institution would exacerbate Torrez's mental illness, limit his access to a law library, and affect his mental state so he might be incompetent to stand trial.

Torrez asked defendants Semple, Black, Jones, and Syed to review the surveillance footage in the admitting and processing room to see that, in fact, he was the one assaulted. They told Torrez that there were no surveillance cameras in the room. Without camera footage, Torrez

was unable to defend himself at the administrative segregation hearing, disciplinary hearing, and criminal trial resulting from the incident.

While on administrative segregation, Torrez was subjected to solitary confinement and extremely restrictive housing conditions. He was denied telephone access, visits, commissary, CDs and a CD player, a television, a hand-held game boy unit, and other property which he used (such as a copy machine). Whenever he left his cell, Torrez was fully restrained. He was allowed one hour of out-of-cell recreation five times per week and three showers per week. He had to recreate outdoors even during inclement weather, but was not provided adequate inclement weather clothing. Torrez ate all meals in his cell.

**II. Analysis**

Torrez asserts four claims: (1) all defendants were deliberately indifferent to his safety and serious mental needs in violation of the Eighth and Fourteenth Amendments; (2) defendants Semple, Black, Jones, and Syed violated his Fourteenth Amendment right to due process by failing to transfer him to Garner Correctional Institution for mental health treatment instead of administrative segregation; (3) defendants Semple, Black, and Jones created a policy under which Torrez was deprived of adequate care and safety, and also failed to adequately supervise and train their subordinates; and (4) all defendants violated his rights under the Americans with Disabilities Act.

A. <u>Eighth Amendment Claims</u>

Torrez states that he brings his claims regarding excessive force, deliberate indifference and conditions of confinement under the Eighth and Fourteenth Amendments. "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process

4

Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Because Torrez alleges that he was a pretrial detainee at all times relevant to his claim, he must assert his claims under the Fourteenth Amendment. I dismiss all Eighth Amendment claims pursuant to 28 U.S.C. § 1915A(b)(1).

B. Fourteenth Amendment Claims

1. *Excessive Force / Deliberate Indifference to Safety*

A pretrial detainee asserting an excessive force claim "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, __ U.S.__, __, 135 S. Ct. 2466, 2473 (2015). Torrez alleges that he was walking back to the bull pen in compliance with Officer Castillo's order when Officer Castillo moved immediately in front of Torrez. Although Torrez raised his hands to indicate he did not want any trouble, Officer Castillo punched him. In addition, Officer Anderson also used force against him and, instead of intervening to protect Torrez, Officer Pisano deliberately mischaracterized the incident. Those allegations suffice to satisfy the requirement of *Kingsley*.

2. *Deliberate Indifference / Conditions of Confinement*

Torrez's claims for deliberate indifference to serious mental health needs and for unconstitutional conditions of confinement are based on his initial strip search and confinement in restrictive housing, as well as his confinement on administrative segregation at Northern Correctional Institution (where he was provided no mental health treatment and subjected to conditions that exacerbated his mental health conditions, rather than being transferred to Garner Correctional Institution where he could be provided proper mental health treatment).

5

To state a claim for deliberate indifference to a serious mental health need, Torrez must show both that his mental health need was "serious" and that the defendants acted with a "sufficiently culpable state of mind." *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)). The deliberate indifference standard has "both [] objective and subjective" components. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)—that is, the condition must "produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). That standard applies under both the Eighth and Fourteenth Amendments. Torrez's mental disorders, as alleged, satisfy the objective component.

For an unconstitutional conditions of confinement claim, Torrez must show that the conditions under which he was confined constitute a "denial of the minimal civilized measures of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). Torrez alleges that the defendants have denied him any mental health treatment and that the conditions of confinement exacerbate his mental disorders. That deprivation is, "objectively, 'sufficiently serious'" to state a claim for unconstitutional conditions of confinement. *See id.* (quoting *Wilson*, 501 U.S. at 298).

Under the Eighth Amendment, the subjective component for each claim requires that defendants be "subjectively aware" that their actions create "a substantial risk [of] serious inmate harm." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). The subjective standard differs, however, for Fourteenth Amendment deliberate indifference and unconstitutional conditions of confinement claims. The Second Circuit has applied *Kinglsey*—which expressly dealt with an

6

excessive use of force claim—to claims of unconstitutional conditions of confinement by pretrial detainees, and has indicated that *Kingsley* should be applied to all deliberate indifference claims by pretrial detainees, as well. *See Darnell*, 849 F.3d at 35 ("A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether through the use of excessive force, by deliberate indifference to the conditions of confinement, or otherwise."). As the Second Circuit determined, "the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." *Id.* Accordingly, for a claim of deliberate indifference to mental health needs or unconstitutional conditions of confinement under the Fourteenth Amendment, a pretrial detainee can satisfy the subjective element by showing that the defendants "knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* At the same time, negligent actions alone do not rise to the level of deliberate indifference and are not cognizable under section 1983. *See Kingsley*, 135 S. Ct. at 2472 ("[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.").

Torrez has alleged facts suggesting that defendants Semple, Black, Jones, and Syed were aware of the conditions at Northern Correctional Institution and of his mental health needs, but still had him transferred there. That allegation suffices, at the present stage of the litigation, to state plausible claims for deliberate indifference to mental health needs and unconstitutional conditions of confinement in violation of the Fourteenth Amendment.

C. Supervisory Liability

Torrez also includes a claim for supervisory liability against defendants Semple, Black, and Jones for creating the policy under which mentally ill inmates are confined under restrictive

7

conditions at Northern Correctional Institution and for failing to adequately train and supervise their subordinates.

To state a claim for supervisory liability, Torrez must demonstrate that the defendants (1) actually and directly participated in the alleged constitutional violation; (2) failed to remedy a wrong after being informed of it though a report or appeal; (3) created or approved a policy or custom that sanctioned objectionable conduct that rose to the level of a constitutional violation, or permitted such a policy or custom to continue; (4) were grossly negligent in their supervision of the officers who committed the constitutional violation; or (5) were deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). In addition, Torrez must demonstrate an "affirmative causal link" between the actions of the supervisory official and his injuries. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Torrez alleges that defendants Semple, Black, and Jones were responsible for his transfer and were aware that the conditions at Northern Correctional Institution would exacerbate his mental health disorders. He also alleges that they ignored his complaints that he was falsely accused, and that they did not properly train and supervise their subordinates to ensure that the incident did not occur. Those allegations are sufficient, at the present stage of the litigation, to state a plausible claim for supervisory liability.

D. Americans with Disabilities Act

Finally, Torrez asserts a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Id.*

8

at § 12101(b)(1). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity." *Id.* at § 12132. The statute is intended "to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2)(A). "[I]n assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities." *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998). For purposes of this Ruling, I assume that Torrez's mental disorders constitute a disability under the ADA.

To state a claim under the ADA, Torrez must also allege facts showing that he was denied or excluded from a service, program or activity because of his disability. Torrez alleges that he was treated the same as any other inmate accused of assaulting staff. His claim is that he should have been treated differently because of his disability. Thus, Torrez fails to allege facts satisfying the second requirement to state an ADA claim.

Moreover, the Second Circuit has held that "a private suit for money damages under Title II of the ADA may only be maintained against a state if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." *Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001). Torrez alleges that the defendants acted as they did because they had been led to believe that he had assaulted Officer Castillo. Thus, Torrez has alleged no facts demonstrating a discriminatory animus or ill will.

## III. Conclusion

All Eighth Amendment and ADA claims are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the Fourteenth Amendment claims for use of excessive force, deliberate indifference to safety, deliberate indifference to mental health needs and unconstitutional conditions of confinement and the supervisory liability claims.

In accordance with the foregoing analysis, I enter the following orders:

(1) **The Clerk shall** verify the current work address for each defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packets containing the Complaint to the defendants within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within **thirty (30) days** from the date of this order.

(3) **The Clerk shall** send Torrez a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint—either an answer or motion to dismiss—within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, then they shall admit or deny the allegations and respond to the cognizable claims recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Torrez changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that **plaintiff MUST notify the court**. Failure to do so can result in the dismissal of the case. Torrez must give notice of a new address even if he is incarcerated. Torrez should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Torrez has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Torrez should also notify the defendants or their attorneys of his new address.

(10) Torrez shall use the Prisoner Efiling Program when filing documents with the court.

So ordered.

Dated at Bridgeport, Connecticut, this 1st day of September 2017.

<u>/s/ STEFAN R. UNDERHILL</u>
Stefan R. Underhill
United States District Judge